1
2
3
4                            UNITED STATES DISTRICT COURT
5                          NORTHERN DISTRICT OF CALIFORNIA
6
7    UNITED STATES OF AMERICA,              Case No.  25-mj-70765-MAG-1   (TSH)
8                   Plaintiff,
                                            **ORDER FINDING PROBABLE CAUSE**
9           v.
10   JUAN MANUEL GONZALEZ-
     MARTINEZ,
11
                    Defendant.
12

13          On the record at the June 23, 2025 hearing in this action, both parties agreed that it is

14   factually true that on May 11, 2019, Defendant was removed from the United States.

15   Subsequently, in *United States v. Juan Manuel Gonzalez-Martinez*, 19-cr-2256 LAB (S.D. Cal.),

16   the Defendant was charged with one count of violating 8 U.S.C. § 1325(a) on May 24, 2019.  19-

17   cr-2256, ECF No. 16 (superseding information).  The Defendant pled guilty to the 1325 offense

18   and on October 7, 2029 was sentenced to five years' probation.  He was not removed again.  On

19   April 26, 2021, the Southern District of California issued an arrest warrant in connection with a

20   form 12.  The form 12 alleges that Defendant violated 8 U.S.C. § 1326(a) because "[o]n or about

21   February 1, 2021, Mr. Gonzalez, a previously deported alien, was found in the United States,"

22   specifically in Sonoma County.[1]

23          We are here under Federal Rule of Criminal Procedure 32.1(a)(5)(A) because this district

24   lacks jurisdiction to conduct the revocation hearing (that's for the Southern District of California

25   to do), but the alleged probation violation occurred in the district of arrest (meaning that

26   Defendant was "found in" the United States in Sonoma County, which is in this district, and the

27   _____

28   [1] As reflected in the judgment, Defendant's second special condition of supervision was that he
     not commit another federal, state or local crime.  19-cr-2256, ECF No. 31 (judgment).

*United States District Court*
*Northern District of California*

United States District Court
Northern District of California

Defendant was arrested in this district too). Therefore, "the magistrate judge must . . . conduct a preliminary hearing . . . and either (i) transfer the person to the district that has jurisdiction, if the judge finds probable cause to believe that a violation occurred; or (ii) dismiss the proceedings and so notify the court that has jurisdiction, if the judge finds no probable cause to believe that a violation occurred . . ."

Although preliminary hearings typically involve arguments about factual evidence, and what the evidence does or does not show, this one does not. The defense argues that as a matter of law, there can be no 1326(a) violation unless the Defendant was removed *again* following his October 7, 2019 sentencing. The government disagrees. The parties filed written briefs at ECF Nos. 5, 6 and 7.

The Court agrees with the government. Section 1326(a) says:

> Subject to subsection (b), any alien who--
>
> > (1) has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding, and thereafter
> >
> > (2) enters, attempts to enter, or is at any time found in, the United States, unless (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission; or (B) with respect to an alien previously denied admission and removed, unless such alien shall establish that he was not required to obtain such advance consent under this chapter or any prior Act,
>
> shall be fined under Title 18, or imprisoned not more than 2 years, or both.

Here, the parties agree Defendant was removed on May 11, 2019, and the form 12 alleges he was "found in" the United States on February 1, 2021, and the defense does not claim that the "unless" clause is satisfied. Under the plain language of the statute, that sure looks like probable cause for a 1326(a) violation.[2]

---

[2] In his reply brief, Defendant makes a new argument that clause 2 of section 1326(a) is not satisfied because Defendant's May 24, 2019 crossing into the United States did not constitute an "entry." ECF No. 7 at 2. However, in his motion he argued repeatedly that he entered the United States on May 24, 2019 and was convicted for that illegal entry. ECF No. 5 at 1 ("Mr. Gonzalez-

United States District Court
Northern District of California

Defendant argues that Ninth Circuit case law points in a different direction, citing *United States v. Meza-Villarello*, 602 F.2d 209 (9th Cir. 1979), *United States v. Romo-Romo*, 246 F.3d 1272 (9th Cir. 2001), and *United States v. Sanchez-Aguilar*, 719 F.3d 1108 (9th Cir. 2013). Let's consider those cases. In *Meza-Villarello*, the defendant was deported in 1971. He was convicted of a 1326 violation in 1975 and again in 1979. "The principal point on appeal (from the 1979 conviction) is raised by an instruction tendered upon a double-jeopardy theory." 602 F.2d at 210. "It is the defendant's theory that, having once been caught and punished, the alien has 'paid his debt' to the United States for the violation of 8 U.S.C. § 1326, and is thereafter free to remain in the country without further criminal liability." *Id*. The Court of Appeals explained that "[t]he argument is ingenious but is not supported by the words of the statute or by its history." *Id*. The Court of Appeals further explained that "[w]e do not believe Congress intended to require a separate official or formal act of deportation to precede each repeated violation of section 1326." *Id*. at 211. Nonetheless, "[t]o avoid an unfair prosecution following an arrest at the prison gates . . . the government should be required to prove that the defendant had been outside the United States after each conviction before again prosecuting him for being 'found' within the United States in violation of 8 U.S.C. § 1326." *Id*. The court noted that there was proof of that in that case.

In *Romo-Romo*, the defendant argued that he could not have violated section 1326 in the absence of proof that he left the United States. As noted, Section 1326(a) says:

> Subject to subsection (b), any alien who--
>
> > (1) has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding, and

---

Martinez was sentenced to five years of probation for felony illegal entry committed on May 24, 2019."), 2 ("there was no removal after Mr. Gonzalez-Martinez's 2019 entry"), 2 ("On June 23, 2025, the evidentiary hearing did not take place, and more briefing was requested, because the facts are not in dispute. As noted in the petition, and as represented by the United States at the June 23, 2025, hearing, Mr. Gonzalez-Martinez was removed from the United States on May 11, 2019. He then entered the United States, in SDCA, on May 24, 2019."), 3 ("there is no allegation that Mr. Gonzalez-Martinez left the United States after his May 24, 20219 illegal entry"), 3 ("He never 'reentered' for the purpose of the statute: he entered on May 24, 2019, and was convicted of that entry."), 5 ("Without an intervening act of leaving the country and returning, he cannot be convicted of reentry: there is none, only the May 24, 2019 entry, for which he was placed on probation."). This change of position following repeated acknowledgments that Defendant entered the United States on May 24, 2019 is not sufficient to dispel probable cause.

thereafter

> (2) enters, attempts to enter, or is at any time found in, the United States, unless (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission; or (B) with respect to an alien previously denied admission and removed, unless such alien shall establish that he was not required to obtain such advance consent under this chapter or any prior Act,

shall be fined under Title 18, or imprisoned not more than 2 years, or both.

The Court of Appeals held that a failed deportation did not satisfy clause (1).  246 F.3d at 1276.

That holding has nothing to do with our case because the parties agree that Defendant was in fact removed from the United States on May 11, 2019, so clause (1) is satisfied.

*Sanchez-Aguilar* considered *Meza-Villarello* further.  In *Sanchez-Aguilar*, the defendant had previously been convicted, in 2009, for violating section 1326 based on the same 2006 removal order that formed the predicate for the conviction in that case.  The Court of Appeals explained:

> There is nothing inherently wrong with that; under the "found in" prong of § 1326, the same removal order can serve as the basis for more than one conviction, so long as the government "prove[s] that the defendant ha[s] been outside the United States after each conviction" before he is again prosecuted for violating § 1326. *United States v. Meza-Villarello*, 602 F.2d 209, 211 (9th Cir. 1979) (per curiam). We adopted that rule, grounded in double jeopardy concerns, to avoid the specter of the government obtaining one § 1326 conviction and then, after releasing the defendant from prison, arresting him at the prison gates for again being "found in" the United States. *Id.*

719 F.3d at 1110.

In that case:

> [T]he government did not prove at trial that Sanchez–Aguilar had been outside the United States between his 2009 conviction and his arrest for the offense at issue here. But in fact he had been. It is undisputed that, upon completing his sentence for the 2009 conviction, Sanchez–Aguilar was immediately removed to Mexico on September 3, 2010. The jury never learned of that fact because the district court excluded any evidence relating to the 2010 removal order.

*Id.*

4

1    Thus:

> The question we must resolve is whether the government's failure to prove at trial that Sanchez–Aguilar left the United States after his 2009 conviction is of any significance. Sanchez–Aguilar contends the government's failure to prove that fact means there was insufficient evidence to support his conviction in this case. We view the matter differently. Proof of Sanchez–Aguilar's post–2009 departure from the United States, although necessary to avoid double jeopardy concerns, was not an element of the § 1326 offense submitted to the jury. To obtain a conviction, the government needed to prove only that Sanchez–Aguilar had been removed from the United States in 2006, and that at some point thereafter he knowingly and voluntarily returned to the United States without first obtaining the requisite permission to do so. The government introduced ample proof of those statutory elements at trial, and Sanchez–Aguilar does not contend otherwise. Thus, the government introduced sufficient evidence to sustain his conviction.

*Id.* (citations omitted).

That left the question "whether Sanchez–Aguilar's conviction violates his right not to 'be subject for the same offence to be twice put in jeopardy of life or limb.' U.S. Const. amend. V." *Id.* at 1111. "Under *Meza-Villarello*, in order to ensure that his conviction in this case is for a different § 1326 'offence,' the government had to show that Sanchez-Aguilar left the United States after his 2009 conviction." The court concluded the government had shown this, pointing out that it was factually undisputed that the defendant had been removed from the United States in September 2010. *Id.* The court also rejected the argument "that, in analyzing [defendant's] double jeopardy defense, we are limited to reviewing the evidence presented to the jury." *Id.*

*Sanchez-Aguilar*'s clear holding is that the government has no burden to prove that the defendant left the United States between successive 1326 convictions: "Proof of Sanchez-Aguilar's post–2009 departure from the United States, although necessary to avoid double jeopardy concerns, was not an element of the § 1326 offense submitted to the jury." *Id.* at 1110. Instead, that proof is necessary to avoid the affirmative defense of Double Jeopardy: "[I]n order to ensure that his conviction in this case is for a different § 1326 'offence,' the government had to show that Sanchez-Aguilar left the United States after his 2009 conviction." *Id.* at 1111.

That holding could perhaps be the end of the analysis. The Court's limited role under Rule 32.1(a)(5)(A) is to determine whether there is "probable cause to believe that a violation

occurred." Here, there is way more than probable cause: "To obtain a *conviction*, the government needed to prove only that Sanchez-Aguilar had been removed from the United States in 2006, and that at some point thereafter he knowingly and voluntarily returned to the United States without first obtaining the requisite permission to do so." *Sanchez-Aguilar*, 719 F.3d at 1110 (emphasis added). Here, the parties agree that the Defendant was removed from the United States in May 2019, and it is not significantly disputed (*see* fn.2) that at some point thereafter he knowingly and voluntarily returned to the United States without first obtaining the requisite permission to do so. That is enough for a conviction.

Under *Sanchez-Aguilar*, the failure to prove that the defendant left the United States after a previous 1326 conviction gives rise to an affirmative defense of Double Jeopardy. Defendant does not advance any legal arguments or cite any legal authority for the proposition that a probable cause showing under Rule 32.1 requires disproving affirmative defenses.

But let's go ahead and assume for the sake of argument that a good affirmative defense could negate a showing of probable cause. Does Defendant have a good Double Jeopardy affirmative defense? It doesn't seem like it. *Meza-Villarello* and *Sanchez-Aguilar* considered consecutive 1326 convictions. But here, Defendant's prior conviction was for 1325(a), which states:

> Any alien who (1) enters or attempts to enter the United States at any time or place other than as designated by immigration officers, or (2) eludes examination or inspection by immigration officers, or (3) attempts to enter or obtains entry to the United States by a willfully false or misleading representation or the willful concealment of a material fact, shall, for the first commission of any such offense, be fined under Title 18 or imprisoned not more than 6 months, or both, and, for a subsequent commission of any such offense, be fined under Title 18, or imprisoned not more than 2 years, or both.

That's a different crime from a violation of 1326(a). Section 1325(a) applies to any alien and makes it criminal to enter or attempt to enter the United States at the wrong time or place, or to elude examination by immigration officers, or to enter or attempt to enter the United States by fraud. A violation of section 1326(a), by contrast, applies only to a class of aliens (ones who have been denied admission, removed, and so on) and who then enter, attempt to enter, or are found in the United States. Someone who violates section 1325(a) does not necessarily violate section

1326(a), for example, if he had not previously been deported, removed, and so on. And someone who violated section 1326(a) did not necessarily violate section 1325(a), for example, if he did not enter the United States at the wrong time or place, elude examination by immigration officials, or use fraud to gain entry to the United States.

Because sections 1325(a) and 1326(a) describe different crimes that have different elements, there is no basis to think there is any Double Jeopardy problem with prosecuting the Defendant under section 1326(a) when he hasn't left the United States following his section 1325(a) conviction. *See United States v. Flores-Peraza*, 58 F.3d 164, 166-68 (5th Cir. 1995) (holding that for purposes of the Double Jeopardy Clause, sections 1325(a) and 1326(a) describe different crimes with different elements); *cf. United States v. Aguilar*, 292 Fed. Appx. 622, 623 (9th Cir. 2008) ("Section 1325 requires elements that § 1326 does not and so is not a lesser-included offense of § 1326."). Accordingly, the Court **FINDS** probable cause to believe a violation occurred and will transfer the Defendant to the Southern District of California.

**IT IS SO ORDERED.**

Dated: June 26, 2025

THOMAS S. HIXSON
United States Magistrate Judge